**[J-25-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | |
|---|---|
| SHARLEEN M. RELLICK-SMITH,<br><br>        Appellant<br><br>        v.<br><br>BETTY J. RELLICK AND KIMBERLY V. VASIL,<br><br>        Appellees | : No. 23 WAP 2020<br>:<br>: Appeal from the Order of the<br>: Superior Court entered March 31,<br>: 2020 at No. 919 WDA 2019,<br>: affirming the Order of the Court of<br>: Common Pleas of Indiana County<br>: entered March 25, 2019 at No. 32-<br>: 14-0490.<br>:<br>: ARGUED: April 14, 2021<br>: |


## OPINION ANNOUNCING THE JUDGMENT OF THE COURT


**JUSTICE TODD**                                            **DECIDED: OCTOBER 20, 2021**

In this appeal by allowance, we consider whether the Superior Court erred in affirming an order of the trial court that permitted the appellees to file an amended answer to include the affirmative defense of statute of limitations, which a different trial court judge previously ruled was waived. As we conclude that the second trial judge's order violated the coordinate jurisdiction rule in this regard, we hold that the Superior Court erred in affirming his order, and, accordingly, we reverse the Superior Court's decision, vacate in part the trial judge's order, and remand the matter to the trial court for further proceedings consistent with this opinion.

On August 6, 2006, Rose Rellick (hereinafter, "Decedent"),[1] purchased two Certificates of Deposit ("CDs"), listing as co-owners herself; her sister, Betty J. Rellick;

---

[1] Decedent died on December 20, 2012.

and the daughters of her deceased brother George − Kimberly Vasil and Sharleen M. Rellick-Smith (hereinafter, "Appellant"). Prior to purchasing the CDs, Decedent executed powers of attorney designating Betty and Kimberly (hereinafter, "Appellees") as her attorneys-in-fact. It purportedly was Decedent's intention that, upon her death, the proceeds of the CDs be divided equally among Appellant and Appellees. However, on July 31, 2009, prior to Decedent's death, Appellees removed Appellant's name from the CDs. In March 2013, subsequent to Decedent's death, Appellees cashed the CDs, which were worth approximately $370,000, and divided the money between the two of them.

On October 10, 2014, Appellant filed an action against Appellees, claiming they breached their fiduciary duties to Decedent by removing Appellant's name from the CDs and refusing to pay her any of the proceeds. Appellees filed a timely response to the complaint, but, relevant to the instant appeal, did not raise any affirmative defenses therein. Four months later, on February 11, 2015, Appellees filed a "motion to dismiss," arguing that Appellant lacked standing and that her claim was barred by the statute of limitations.[2] The case was assigned to the Honorable Carol Hanna, who granted Appellees' motion on the basis that Appellant lacked standing. Notably, however, Judge Hanna determined that Appellees waived the statute of limitations defense by failing to raise it as a new matter in their answer, as required by Pa.R.C.P. 1030(a) ("[A]ll affirmative defenses including . . . statute of limitations . . . shall be pleaded in a responsive pleading under the heading 'New Matter.'").

Appellant appealed Judge Hanna's order, and the Superior Court reversed and remanded the case to the trial court, holding that Appellant, in fact, did have standing to

---

[2] In their brief, Appellees recognize that the motion filed on their behalf was incorrectly titled a "Motion to Dismiss," and should have been designated as a "Motion for Judgment on the Pleadings." *See* Appellees' Brief at 3 n.2. We will utilize the proper designation of "motion for judgment on the pleadings" throughout this opinion.

pursue her claim. *Rellick-Smith v. Rellick*, 147 A.3d 897, 904 (Pa. Super. 2016). In its opinion, the Superior Court observed that neither party challenged Judge Hanna's finding that Appellees waived the statute of limitations defense. *Id.* at 901 n.12 ("Neither party addresses on appeal the statute of limitations issue raised in [Appellees'] Motion to Dismiss.").

On remand, the case initially was assigned to the Honorable William Martin, as Judge Hanna had retired from the court on June 6, 2016. On May 16, 2017, Appellees filed a motion for summary judgment wherein they made no mention of the statute of limitations defense. Judge Martin denied the motion for summary judgment, finding there were outstanding issues of material fact. Thereafter, the case was reassigned to the Honorable Thomas M. Bianco, who presided over all remaining proceedings.

On July 30, 2018, Appellees filed a motion to amend their pleading to include numerous affirmative defenses, including a statute of limitations defense. Acknowledging Judge Hanna's finding that Appellees waived the statute of limitations defense by failing to raise it in their answer to Appellant's complaint, Judge Bianco nevertheless granted Appellees' motion to amend based on the Superior Court's decision in *Horowitz v. Universal Underwriters Insurance Co.*, 580 A.2d 395 (Pa. Super. 1990) (holding that trial court should have allowed party to amend its answer to affirmatively plead statute of limitations defense despite the fact that amendment was sought more than four years after original answer was filed), which, in his view, supports the liberal amendment of pleadings. Judge Bianco reasoned, *inter alia*, that Appellant would not be prejudiced if Appellees were permitted to amend their pleading, as Appellees' assertion of the statute of limitations defense did not come as a surprise to Appellant, given that Appellees raised it in their February 2015 motion for judgment on the pleadings before Judge Hanna.

Judge Bianco further determined that Appellant failed to establish that material evidence was lost due to Appellees' delay in raising the statute of limitations defense.

Following the grant of Appellees' motion to amend, the case proceeded to a non-jury trial, at which Appellant testified to the facts set forth above. Appellant stated that she could not recall when she learned that Appellees removed her name from the CDs. Appellant also presented the testimony of Ann Marcoaldi, Decedent's secretary and tax preparer. Marcoaldi testified that Decedent purchased the CDs for estate planning purposes, and that Decedent intended that the proceeds of the CDs be divided equally between Appellant and Appellees following her death. Marcoaldi stated that she and Appellant learned in September 2009 that Appellees removed Appellant's name from the CDs, and that they began to "investigate the removal around that time." *Rellick-Smith v. Rellick*, No. 919 WDA 2019, at 3 (Pa. Super. filed March 31, 2020). Ultimately, Judge Bianco determined that Appellant learned that Appellees removed her name from the CDs in September 2009, at which point the two-year statute of limitations began to run. As a result, he concluded that Appellant's action, filed on October 10, 2014, was barred by the statute of limitations, and he declined to address the underlying merits of her claim.

Appellant appealed Judge Bianco's order to the Superior Court, arguing, *inter alia*, that he erred in granting Appellees' motion to amend their pleading to include a statute of limitations defense because Appellees waived that defense by failing to raise it in their initial response to her complaint. Furthermore, Appellant alleged that, in light of Judge Hanna's prior determination that Appellees waived the statute of limitations defense, Judge Bianco was precluded from granting Appellees' motion to amend their pleading to include that defense under the coordinate jurisdiction rule, which generally prohibits a judge from altering the resolution of legal questions previously decided by another judge

of coordinate jurisdiction. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995).[3]

Finally, Appellant claimed she was prejudiced by Appellees' delay in raising a statute of limitations defense because her witness's memory had diminished by the time the matter finally proceeded to trial.

The Superior Court affirmed Judge Bianco's order in a divided, unpublished memorandum opinion authored by Senior Judge Pellegrini. *Rellick-Smith, supra.* The court rejected Appellant's contention that, under the coordinate jurisdiction rule, Judge Bianco was required to hold that Appellees waived the statute of limitations defense by failing to raise it in new matter. It recounted that, in *Riccio v. American Republic Insurance Co.*, 705 A.2d 422 (Pa. 1997), this Court explained that, when determining whether the coordinate jurisdiction rule applies, we "look[] to where the rulings occurred in the context of the procedural posture of the case," and stated:

> Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge had denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

*Id.* at 425 (citation omitted).

The Superior Court suggested that Appellees, in their motion to amend their pleading, did not ask Judge Bianco to overturn Judge Hanna's waiver ruling, but, rather, presented an "entirely different procedural question: whether [Appellant] would be

---

[3] As further discussed *infra*, departure from the rule is permitted in exceptional circumstances, such as where there has been an intervening change in the controlling law or a substantial change in the facts or evidence, or where the prior holding was clearly erroneous and would result in manifest injustice if upheld. *Starr*, 664 A.2d at 1332.

prejudiced by the delay in raising the statute of limitations defense." *Rellick-Smith*, 919 WDA 2019, at 7. For this reason, the Superior Court determined that "[t]he law of the case doctrine did not bar [Judge Bianco] from addressing this question which had not been presented to Judge Hanna" or raised in the previous appeal. *Id.*[4] Additionally, the Superior Court concluded that Appellant was not prejudiced by Appellees' delayed invocation of the statute of limitations defense, given that Appellees initially attempted to raise it in their February 2015 motion for judgment on the pleadings, which was filed a mere four months after Appellant filed her complaint.

The Honorable Mary Jane Bowes authored a dissenting opinion in which she opined that, under the coordinate jurisdiction rule, Judge Hanna's finding that Appellees waived the statute of limitations defense was binding on Judge Bianco, and, therefore, precluded him from granting Appellees' motion to amend their pleadings to include a statute of limitations defense. First, Judge Bowes disagreed with Judge Bianco's reliance on *Horowitz,* noting that the coordinate jurisdiction rule was not implicated in that case. She further suggested that Judge Bianco's focus on the absence of prejudice to Appellant was improper, as a showing of prejudice is unnecessary when an order allowing a proposed amendment to a pleading violates the law of the case doctrine. Judge Bowes concluded that Appellant had a right to rely upon Judge Hanna's waiver determination, reiterating that "[t]he law of the case doctrine recognizes that when later rulings upend earlier rulings, the parties' expectations are dashed, proceedings are inconsistent, and finality is undercut." *Rellick-Smith*, 919 WDA 2019, at 9 (Bowes, J., dissenting).

Judge Bowes further noted that Judge Hanna's finding of waiver was consistent with both Pa.R.C.P. 1030(a), and Pa.R.C.P. 1032(a) ("A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply,

---

[4] The coordinate jurisdiction rule is one of the distinct rules encompassed by the broader "law of the case" doctrine. *Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003).

except a defense which is not required to be pleaded under Rule 1030(b)[.]"), and, therefore, was not "clearly erroneous." *Id.* at 6. Moreover, she observed there had been no intervening change in the law, facts, or evidence that would render the coordinate jurisdiction rule inapplicable. *See Starr*, 664 A.2d at 1332. Accordingly, Judge Bowes opined that Judge Bianco had no basis for disregarding Judge Hanna's ruling, and she indicated that she would have vacated Judge Bianco's order and remanded for findings of fact and conclusions of law regarding the underlying merits of Appellant's claims.

Appellant filed a petition for allowance of appeal, and we granted review to consider whether the Superior Court erred in affirming Judge Bianco's decision allowing Appellees to file an amended answer to include the affirmative defense of statute of limitations, notwithstanding Judge Hanna's prior determination that Appellees waived the statute of limitations defense. Specifically, we must determine whether Judge Bianco's order violated the coordinate jurisdiction rule. This question presents an issue of law, over which our standard of review is *de novo*, and our scope of review is plenary. *Zane*, 836 A.2d at 30 n.8.

Appellant argues that Judge Bianco's grant of Appellees' motion to amend their pleadings to add a statute of limitations defense, after Judge Hanna held that Appellees waived the statute of limitations defense, was a clear violation of the coordinate jurisdiction rule. Appellant further asserts that there were no exceptional circumstances to support Judge Bianco's departure from the rule, as Judge Hanna's finding of waiver was consistent with Pa.R.C.P. 1030, and thus not clearly erroneous, and there were no intervening changes of law or fact.

Appellant, as did Judge Bowes in her dissent, challenges Judge Bianco's reliance on *Horowitz*, emphasizing that *Horowitz* did not involve the law of the case doctrine or the coordinate jurisdiction rule. Appellant maintains that *Horowitz* is also distinguishable

because, in that case, the Superior Court concluded that there was no evidence to suggest that the opposing party would be prejudiced by the amendment, whereas, in the instant case, there was clear prejudice because her memory, and the memory of her witnesses, which had diminished over the span of four years, were central to Judge Bianco's ruling on the underlying merits of the statute of limitations issue.

Appellees respond by arguing, in the first instance, that Judge Bianco's order granting their petition to amend their pleading did not violate the coordinate jurisdiction rule because his order was not actually inconsistent with Judge Hanna's previous finding of waiver. In this regard, Appellees note that, while Rule 1030 requires that affirmative defenses, including a statute of limitations defense, be raised in an answer and new matter upon pain of waiver under Rule 1032(a), Rule 1033(a) specifically allows for the amendment of a pleading to "aver transactions or occurrences which have happened **before** or after the filing of the original pleading, even though they give rise to a **new** cause of action or **defense**." Appellees' Brief at 6 (quoting Pa.R.C.P. 1033(a)) (emphasis original).

Thus, Appellees submit that:

> [t]he waiver of those affirmative defenses that automatically occur upon a failure to plead them cannot serve as a basis to deny a subsequent request to amend a pleading to add that waived affirmative defense, because then a party could never amend a pleading to add an affirmative defense, as all unpled affirmative defenses are automatically waived the instant they are not pled. Such a result would be absurd and disfavored in the law.

*Id.* at 6-7. In support of their interpretation, Appellees cite this Court's decision in *Martin v. Wilson*, 92 A.2d 193 (Pa. 1952), wherein we stated that, under Rule 1030, a failure to plead an affirmative defense "renders the defense unavailable **at the trial of the issue**," *id.* at 195 (emphasis added), positing that this Court's use of the emphasized language

suggests that waiver does not immediately occur upon a failure to plead the affirmative defense.

Appellees additionally contend that Judge Bianco's order did not violate the coordinate jurisdiction rule because, at the time he issued his ruling, the procedural posture of the case was different than it was when Judge Hanna issued her decision concluding that Appellees waived the statute of limitations defense. In this regard, Appellees emphasize that Judge Hanna's ruling was issued in response to Appellees' motion for judgment on the pleadings, "which required [Judge Hanna] to consider and accept all well-pled allegations of the complaint as true, and determine whether on the facts averred, the law concludes that no recovery is possible, with any doubts on whether to grant [Appellees' motion]" being resolved in favor of Appellant, whereas Judge Bianco's ruling was rendered following the close of discovery, and was based on "completely different facts and law; specifically, whether given Pennsylvania's liberal standard for granting amendments to the pleadings, would allowing the amendment prejudice [Appellant] or be against a positive rule of law." Appellees' Brief at 20 (citing *Horowitz*, *supra*).

To support their contention that the procedural posture of the instant case was different at the time Judge Hanna and Judge Bianco issued their rulings, Appellees rely on, *inter alia*, this Court's decisions in *Riccio*, *supra*, *Ryan v. Berman*, 813 A.2d 792 (Pa. 2002) (holding coordinate jurisdiction rule did not prevent trial judge from allowing defendants, who were doctors, to amend their pleadings to include a release that the plaintiff had entered into in a separate lawsuit, despite a prior trial judge's denial of the defendants' previous request to amend their pleadings), and *Gerrow v. John Royle & Sons*, 813 A.2d 778 (Pa. 2002) (holding coordinate jurisdiction rule did not bar second trial judge, in ruling on a motion for summary judgment, from considering an expert report

that was attached to the response to the motion, even though prior judge had denied joint motion to extend discovery deadline).

Finally, Appellees argue that, even if the coordinate jurisdiction rule is implicated in the instant case, there are exceptional circumstances that justified Judge Bianco's departure from the rule, *i.e.*, the fact that Judge Hanna's decision was, in their view, "clearly incorrect," and their belief that adherence thereto would "work a manifest injustice." Appellees' Brief at 24. In this respect, Appellees contend that a determination that Judge Hanna's ruling was binding on Judge Bianco would conflict with the rule that amendments should be liberally permitted, and prevent them "from asserting their legal right to allege a meritorious defense." *Id.* at 27.

This Court previously has explained that, under the coordinate jurisdiction rule, "[j]udges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Ryan*, 813 A.2d at 795 (quoting *Starr*, 664 A.2d at 1331). Beyond promoting the goal of judicial economy, the coordinate jurisdiction rule serves "(1) to protect the settled expectations of the parties; (2) to insure [sic] uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Id.* (quoting *Starr*, 664 A.2d at 1331).

We have further cautioned that departure from the coordinate jurisdiction rule "is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* (quoting *Starr*, 664 A.2d at 1332).

Preliminarily, we reject Appellees' argument that Judge Bianco's order was not "inconsistent" with Judge Hanna's prior ruling, and, therefore, that the coordinate

jurisdiction rule is not implicated in this case. Appellees' Brief at 4. Prior to Judge

Bianco's grant of Appellees' petition to amend their pleadings *to include a statute of*

*limitations defense*, Judge Hanna, a judge of coordinate jurisdiction, held that Appellees

*waived the statute of limitations defense* by failing to raise it in accordance with Rule 1030.

Judge Bianco's decision, which allowed Appellees to amend their pleading to raise the

precise defense Judge Hanna held was waived, unquestionably conflicted with Judge

Hanna's prior ruling on the same issue.[5][6]   The fact that Rule 1033 provides a mechanism

---

[5] In his dissenting opinion, Chief Justice Baer opines that "the inquiry of whether Appellees were entitled to judgment on the pleadings is a distinct legal question from whether Appellees' motion to amend their pleadings should be granted." Dissenting Opinion (Baer, C.J.) at 1. Respectfully, Chief Justice Baer's position might be justifiable had Appellees not sought permission from Judge Bianco to amend their pleadings *specifically to include the statute of limitations defense* that Judge Hanna determined was waived. Indeed, we recognize that a trial court generally has discretion to allow parties to amend their pleadings, particularly when such amendment is not prejudicial to the nonmoving party, and our holding is not intended to limit a trial court's discretion in this regard. However, as Appellant observes, the question presently before this Court "is not whether the Trial Court erred in allowing the Appellees to file an amended Answer and New Matter generally," but, rather, "whether the Trial Court erred in allowing the amendment to include the specific affirmative defense that the action was barred by the statute of limitations." Appellant's Brief at 20-21. In granting Appellees permission to amend their pleadings to include the exact defense Judge Hanna had already deemed waived, Judge Bianco implicitly overruled and altered Judge Hanna's ruling.

[6] In a separate dissenting opinion, Justice Mundy suggests that "nothing in Judge Hanna's order precluded Appellees from amending the complaint," noting that "Judge Hanna did not decide the issue of whether Appellees could later amend their answer to include that defense," and "did not declare that the defense was waived with prejudice." Dissenting Opinion (Mundy, J.) at 1-2. Justice Mundy further expresses concern that our holding is contrary to the principle allowing for the liberal amendment of pleadings. Initially, we note that it is not surprising that Judge Hanna, in declaring Appellees waived the statute of limitations defense, did not address the issue of whether Appellees could later amend their answer to include the defense, or hold that Appellees waived the defense "with prejudice." Why would she? Waiver of an affirmative defense is not a simple defect in a pleading that can be corrected, and we are aware of no requirement that a judge expressly state that a finding of waiver is made "with prejudice" to be considered a final ruling. Further, we reiterate that the issue is not whether Judge Bianco erred in allowing Appellees to file an answer and new matter *generally*, but, rather, whether he erred in allowing them to amend their pleadings to raise *the precise affirmative defense Judge Hanna had previously ruled was waived.* Finally, Justice Mundy offers that, because

---

by which parties may seek leave to amend their pleadings does not, as Appellees suggest, obviate the clear conflict between Judge Hanna's and Judge Bianco's rulings.

We similarly reject Appellees' contention that the coordinate jurisdiction rule is not implicated in this case because, at the time the two rulings were issued, the case was at a different procedural posture.[7] As noted above, Appellees rely on, *inter alia*, this Court's decisions in *Riccio*, *Ryan,* and *Gerrow*. In *Riccio*, the plaintiff sued his medical insurer to recover medical expenses incurred for the treatment of a herniated spinal disc. The insurer filed an answer asserting that coverage was precluded under a policy exclusion. After a one-day nonjury trial, the trial judge ruled in favor of the insurer. The plaintiff filed a motion for post-trial relief, and the trial judge recused himself due to scheduling conflicts; accordingly, the plaintiff's post-trial motions were assigned to a different judge. The post-trial motions judge concluded that the trial judge had applied an incorrect definition for the term "spine" contained in the policy exclusion, found the exclusion did not apply, and granted the plaintiff a new trial. The Superior Court reversed on appeal, holding that the

---

Judge Hanna "would have had the discretion to grant Appellees leave to amend their answer to include a statute of limitations defense, despite her earlier ruling deeming it waived," she "fail[s] to see how the coordinate jurisdiction rule removes that discretion from a subsequent judge *in the same procedural posture.*" Dissenting Opinion (Mundy, J.) at 3 (emphasis added). Respectfully, not only is this statement inconsistent with her prior position that "the procedural posture of the case and the legal inquiry involved *were different* when Judge Bianco granted leave to amend than they were when Judge Hanna denied the motion for judgment on the pleadings," *see id.* at 1 (emphasis added), the purpose of the coordinate jurisdiction rule, for better or for worse, is to prevent "judges of coordinate jurisdiction sitting in the same case from overruling each others' decisions," unless exceptional circumstances exist. *Ryan*, 813 A.2d at 795. As discussed below, none of those exceptional circumstances exists in the instant case.

[7] In her concurring and dissenting opinion, Justice Donohue notes her disagreement with both the majority and dissenting opinions "to the extent that they advance the idea that the procedural posture of a case is a relevant consideration in a coordinate jurisdiction rule analysis." Concurring and Dissenting Opinion (Donohue, J.) at 5. As Justice Donohue acknowledges, however, in examining the cases cited by Appellees for this proposition, we emphasized that it was the "exceptional circumstances" that negated the application of the coordinate jurisdiction rule. *Id.* at 6.

coordinate jurisdiction rule barred the post-trial motions judge from overruling the trial judge's previous ruling, and disagreeing that the trial judge had applied an incorrect definition of the word spine.

On appeal, this Court explained that, although courts generally should not overrule each other's decisions, in order to determine whether the coordinate jurisdiction rule applies, courts should look to the procedural posture where the conflicting rulings were made. Noting that, under Pa.R.C.P. 227.1(a)(1), a post-trial motions judge can order a new trial if he concludes that a factual or legal mistake was made at the trial level, and that the mistake formed a sufficient basis to order a new trial, we determined that "the post-trial motion process is a clearly distinct procedural posture from that of the trial judge rendering a verdict at the conclusion of a non-jury trial." *Riccio*, 705 A.2d at 425. We elaborated:

> [W]e hold that the coordinate jurisdiction rule does not apply to bar a substituted judge hearing post-trial motions *from correcting a mistake made by the trial judge during the trial process.* To hold otherwise and not allow a judge deciding post-trial motions to overrule legal errors made during the trial process (whether made by the reviewing judge or another judge who presided over the trial) would render the post-trial motion rules meaningless and the post-trial motion process would become nothing more than an exercise in futility.

*Id.* at 426 (emphasis added).

Thus, while we held in *Riccio* that the coordinate jurisdiction rule did not bar the post-trial motions judge from overruling the trial judge's verdict and granting the plaintiff a new trial, our decision was based on the fact that Rule 227.1(a)(1) specifically allows for the correction of errors made during the trial process.[8]

---

[8] We ultimately concluded in *Riccio*, however, that the insurance policy at issue did contain a valid exclusion of coverage for the plaintiff's injury, such that the trial judge's interpretation was proper; accordingly, we affirmed the Superior Court's decision reversing the post-trial motions judge's grant of a new trial.

In *Ryan*, the plaintiff filed a medical malpractice action against her doctors and consulting specialists in 1985, alleging that their failure to diagnose her with Cushing's Syndrome required surgery in 1984 to remove a kidney and an attached tumor. Her complaint also alleged that the disease prolonged and exacerbated a work-related injury that she had suffered in 1982; notably, the plaintiff filed a products liability action in 1984 based on that injury. In 1989, the plaintiff settled the products liability action, and she executed a release of claims for all damages resulting from her work-place injury.

The defendants, upon learning of the release, sought to amend their answers in the malpractice action to include the release, and moved for summary judgment, arguing that the release barred the malpractice action. The first judge to which the case was assigned denied both motions. The defendants filed a motion for extraordinary relief, again seeking to amend their answers to include the release and moving for summary judgment. A different trial judge granted relief, and the plaintiff appealed. The Superior Court reversed, holding the second trial judge's actions were prohibited by the coordinate jurisdiction rule. On remand, the matter was assigned to a third judge for trial. During trial, the defendants again moved to amend their answers to incorporate the release, and the third judge took the matter under advisement. At the close of the plaintiff's case-in-chief, the judge allowed the defendants to amend their answers to include the release, concluding that, while the release did not bar the entire malpractice action against the defendants, it did bar the claims of malpractice alleged to have occurred after the work-related accident.

On further appeal by the plaintiff, the Superior Court affirmed the third judge's order allowing the defendants to amend their answers to include the release executed in the products liability action. However, the Superior Court held that the release barred the plaintiff's malpractice action entirely. We granted review to determine whether the third

judge violated the coordinate jurisdiction rule when she overruled the first trial judge's order and allowed the defendants to amend their answers to the plaintiff's complaint to incorporate the plaintiff's release in the products liability case. In holding that she did not, we reasoned:

> In this case, as in *Riccio*, the procedural posture of the case was quite different at the time the two different decisions were made; the [third] judge who presided over the trial was in a superior position to reevaluate the question of the products liability release and its relation to the medical malpractice case than was the [first] pretrial judge who made the initial decision. *During the trial of the plaintiff's case-in-chief, abundant evidence was presented which established that [the plaintiff] was seeking damages in this case for injuries suffered in a work-related products liability case;* this supported the conclusion that the release in the products liability case barred the damages, or some of them, sought in this case. Thus, under the rationale of *Riccio*, the rule of coordinate jurisdiction did not apply.

*Ryan*, 813 A.2d at 795 (emphasis added). Thus, in *Ryan*, our decision was not based solely on the fact that the decisions were issued at different stages of trial. Rather, as the above language indicates, we relied on the fact that there was new evidence presented at trial that justified the third judge's departure from the coordinate jurisdiction rule. *See Starr*, 664 A.2d at 1332 (departure from the coordinate jurisdiction rule is permitted when there has been a substantial change in the facts or evidence giving rise to the dispute).

*Gerrow* also involved a products liability action. Therein, the plaintiffs filed a complaint against several defendants in 1997, and a judge set December 7, 1998, as the deadline for submission of the plaintiffs' expert reports. Prior to the expiration of the deadline, all parties joined in a motion to extend the discovery deadline, but the motion was denied by the same judge; nevertheless, the parties continued discovery after the deadline. One of the defendants that had joined in the motion to extend discovery recognized that the judge had set January 4, 1999, as the deadline for filing pre-trial

motions, and, in order to protect its position, filed a motion for summary judgment. The motion was based on the plaintiffs' failure to timely submit their expert reports, without which they could not establish a *prima facie* case. The plaintiffs filed a response to the motion for summary judgment, attaching several expert reports that apparently were sufficient to establish their *prima facie* case. The motion for summary judgment was assigned to a second judge, who concluded that the plaintiffs' attachment of expert reports to their response to the defendant's motion was an impermissible attempt to circumvent the discovery deadline. He determined that the rule of coordinate jurisdiction prevented him considering the reports, and he granted the motion for summary judgment.

The Superior Court reversed, finding that the plaintiffs' attachment of the expert reports to their response to the defendants' summary judgment motion was a permissible supplementation of the record under Pa.R.C.P. 1035.3(b),[9] and, further, that the coordinate jurisdiction rule did not apply under the circumstances of the case.

This Court, in an Opinion Announcing the Judgment of the Court, affirmed the Superior Court's decision, concluding, *inter alia*, that the coordinate jurisdiction rule did not preclude the second trial judge from considering the expert reports which were filed after the case management deadline established by the first judge for two reasons. First, we found that the first judge's decision was erroneous and created a manifest injustice. *See Starr*, 664 A.2d at 1332 (departure from the coordinate jurisdiction rule is permitted "where the prior holding was clearly erroneous and would create a manifest injustice if followed"). In this regard, we stated:

> [I]t appears erroneous in the first instance for [the first judge]
> to deny the November 23, 1998 motion to extend the

---

[9] Rule 1035.3(b), which pertains to a response to summary judgment, provides: "An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence." Pa.R.C.P. 1035.3(b).

discovery deadline. The motion was joined by all parties. It was based on the necessity of extensive traveling to depose witnesses in several states, as well as a financial crisis faced by one corporate defendant. All parties were aware of these difficulties and believed they justified extension of the discovery timetable. [The first judge] did not permit hearing, argument, or conference on the motion and, in summarily denying it, gave no rationale for the denial. There is thus no basis for this Court to review his discretion in denying the motion. What appears to be an unreasonable decision has no explanation in the record, and the decision appears to be unjust. It would have been perfectly proper for [the second judge] to reexamine the discovery timetable in order to correct that error. That would have served the ends of judicial economy and might have corrected a manifest injustice.

*Gerrow*, 813 A.2d at 782.

We further held that the coordinate jurisdiction rule did not apply because the two judges were presented with different questions:

[The first judge] had been presented with a scheduling issue affecting case management and the court's timetable. [The second judge], by contrast, was faced with the ultimate question of whether summary judgment should be granted, ending the litigation entirely. The considerations were entirely different, so the coordinate jurisdiction rule did not apply in the sense of precluding an examination of Appellees' expert reports to determine whether they established a *prima facie* case, making summary judgment inappropriate.

*Id.* at 783.

As in *Ryan*, our decision in *Gerrow* was not based on the mere fact that the conflicting decisions were issued at different stages of trial. Rather, we specifically determined that the decision of the first judge was erroneous, and created a manifest injustice. We additionally noted that the considerations underlying both decisions were entirely distinct.

In the instant case, following Appellees' February 2015 motion for judgment on the pleadings wherein they asserted that Appellant lacked standing and that her claim was barred by the statute of limitations, Judge Hanna held that (1) Appellant lacked standing;

and (2) Appellees waived the statute of limitations defense by failing to raise it as a new matter in their answer under Pa.R.C.P. 1030(a). Judge Bianco's decision more than three years later allowing Appellees to amend their pleadings to include the statute of limitations defense unquestionably was inconsistent with Judge Hanna's prior ruling, and altered the legal effect thereof.[10] Although the Superior Court suggested that the rulings were not inconsistent because Appellees did not ask Judge Bianco to overturn Judge Hanna's finding that they waived the statute of limitations defense, but, rather, merely requested that Judge Bianco consider "whether [Appellant] would be prejudiced by the delay in raising the statute of limitations defense," *Rellick-Smith*, 919 WDA 2019, at 7, we are unpersuaded by this logic. The question of whether Appellant would be prejudiced if Appellees were permitted to amend their pleadings to include the statute of limitations defense is relevant only if the trial court was in a position to grant the request. As discussed above, because Judge Bianco's order granting Appellees' request for amendment of their pleadings altered the effect of Judge Hanna's prior ruling by undoing her finding that Appellees had waived the statute of limitations defense, Judge Bianco's order violated the coordinate jurisdiction rule, unless one of the limited exceptions to the rule applies. Upon review, we discern no such applicable exception.

First, unlike the first judge's order in *Gerrow*, Judge Hanna's ruling was not erroneous. Rule 1030(a) of the Pennsylvania Rules of Civil Procedure requires that, with

_____

[10] It is this fact that renders Judge Bianco's reliance on *Horowitz* misplaced. The issue in *Horowitz* was whether the trial court erred in denying a petition to amend an answer to a complaint to include the affirmative defense of statute of limitations where the petition was filed more than four years after the filing of the original answer. The Superior Court in *Horowitz* determined that the trial court should have permitted the amendment because it would not violate a positive rule of law, and there was no evidence that the non-moving party would suffer undue prejudice if the amendment was allowed. Critically, however, the trial court in *Horowitz* was not constrained by any prior ruling on the party's petition to amend its pleading, and the coordinate jurisdiction rule was not at issue.

certain exceptions not relevant herein, all affirmative defenses, including but not limited to the defenses of statute of limitations, "shall be pleaded in a responsive pleading under the heading 'New Matter'." Pa.R.C.P. 1030(a). Rule 1032(a) further provides that, with the exception of certain expressly enumerated defenses, which do not include the defense of statute of limitations, "[a] party waives all defenses and objections which are not presented either by preliminary objection, answer or reply." Pa.R.C.P. 1032(a). The fact that Rule 1033 provides a mechanism by which parties may subsequently seek leave to amend their pleadings does not render Judge Hanna's initial ruling, issued more than three years before Appellees sought permission to amend their pleading, erroneous.[11]

Moreover, Appellees do not offer, and our review of the record does not reveal, any intervening change in the controlling law, or, as was the case in *Ryan*, any substantial change in the facts or evidence. Appellant filed her complaint against Appellees in October 2014, and although Appellees undoubtedly were aware of the potentially viable statute of limitations defense within several months, they failed to raise the defense as a new matter in their answer to Appellant's complaint, as required by Pa.R.C.P. 1030(a), instead asserting the defense for the first time in their February 2015 motion for judgment on the pleadings. Appellees do not point to any change in the facts or evidence between June 2015, when Judge Hanna ruled that Appellees waived the statute of limitations

---

[11] In her concurring and dissenting opinion, Justice Donohue opines that, in light of the "well established rule that motions to amend should be liberally granted," Judge Hanna's "refusal to allow the Appellees to amend their answer to raise the statute of limitations as an affirmative defense was clearly erroneous." Concurring and Dissenting Opinion (Donohue, J.) at 5. To reach this conclusion, Justice Donohue relies on several Superior Court cases to suggest that Appellees' motion for judgment on the pleadings filed with Judge Hanna should have been construed as the "equivalent to a motion to amend," and, further, that, by refusing to consider the statute of limitations defense, Judge Hanna denied the motion to amend. *Id.* at 3-4. Respectfully, this Court did not accept review of this case to opine on this procedural issue or the validity of the line of Superior Court caselaw on which she relies.

defense, and July 2018, when they filed their motion with Judge Bianco seeking to amend their answer to include that defense, that would support Judge Bianco's decision to disregard Judge Hanna's prior ruling.

For the above reasons, we find there was no basis for Judge Bianco to disturb Judge Hanna's holding that Appellees waived the statute of limitations defense. Accordingly, we reverse the decision of the Superior Court, vacate the portion of Judge Bianco's order granting Appellees' motion to amend their pleadings to include a statute of limitations defense, and remand the matter to the trial court for further proceedings consistent with this opinion.

Superior Court decision reversed. Case remanded. Jurisdiction relinquished.

Justices Dougherty and Wecht join the Opinion Announcing the Judgement of the Court.

Justice Donohue files a concurring opinion.

Chief Justice Baer files a dissenting opinion in which Justices Saylor and Mundy join.

Justice Mundy files a dissenting opinion in which Justice Saylor joins.